21-1606, Minnesota. Jessica Ehlers v. University of Minnesota. Mr. Fandangola, we'll hear from you when you're ready. Good morning, Your Honor. Good morning, members of the panel. Good morning to counsel. If you'll please the court, the case we have in front of you today presents to you the issue of whether the Minnesota District Court erred in its application of the analysis of the burden-shifting framework for reassignment in a reasonable accommodation case. This court cannot make the University of Minnesota to like the appellant, Jessica Ehlers,  from refusing to reassign her to a vacant position because she has a disability. Ms. Ehlers worked for the University for two years before she was diagnosed with temporal mandibular joint dysfunction, which is commonly known as TMJ, in 2014. She worked for another three years after that diagnosis with various accommodations that were provided by the University. She and the University agreed that she could be reassigned to another position. Ms. Ehlers was to look for open positions for which she was qualified, and the University would review them to see which of these positions she qualified for. Now, under the burden-shifting framework for reassignment, the employee is required to identify these positions that are available for which she qualifies. And then the employer has to correspondingly work with the employee to identify some of the positions. I think our case law is very clear in the executive that this is how it works. Once the employee identifies those job openings, presents it to the employer, the employer has an obligation in good faith to evaluate the positions and to determine if the employee could perform them with or without reasonable accommodation. On March 16, 2017, Ms. Ehlers found four positions, and these positions, the University identified them with ID numbers. She provided those numbers to the University, indicating that she believed she qualified for these positions. The University did not evaluate any of these job openings. On March 28, 2017, she found four others and presented it to the University. The University took a long time to evaluate them. By the time they got there, two of them had been gone, and then one of them she did not qualify for, and then they evaluated one and came to the conclusion that she does not qualify for this position. Now, she was terminated by the University. We filed for discrimination and argued that the University did not satisfy its burden under the shifting requirement for reassignment. They only reviewed one of these positions, and the district court, based on that one review, came to the conclusion that the University met its burden. We do not believe so. This court in Craven looked at the same situation and came to the conclusion that, no, you have to review all of the positions that are presented in good faith and make a decision whether the employee qualifies for it or not. The University did not do that here, and we believe that by the University not fulfilling its obligation, the University discriminated against Ms. Ellis. First, the University argues that there was no information about these jobs in the record. But then in their brief on page 37, they admit that there was information for these positions. They argue that these positions were presented and that these jobs were limited to job ID numbers. Yes, the University created these job ID numbers, and they were able to identify the one that they reviewed by ID numbers. But in their brief, they are trying to get out of this requirement by arguing that just with the ID numbers, they did not know which campus location, which job, or which general statements of some of the jobs appeared to be clear. They said some of the general statements said the jobs were clerical in nature. The issue here, Your Honor, is that she presented jobs to the University. Let me interrupt you. Does this case turn on good faith, whether the University participated or did not participate in good faith in making reasonable efforts to accommodate? Does it turn on good faith? Is that the key to this case? That's partially the key to this case, good faith, because they did not review all of the jobs that were presented to them. And they argue that there was no information about the jobs. Yet, they also present in their brief that they got some information. There were ID numbers, even though they were trying to argue that with ID numbers, they could not find the jobs. They created the ID numbers. They were able to find one, the one that they analyzed. So, yes, Your Honor, good faith is part of it. It also falls on whether they met their obligations under the law. Their burden is to review the jobs that were presented to them for which the employee qualified. They did not. Let me let me follow up, if I may. What I heard you tell me is that the case does, in fact, ultimately turn on good faith. But the first step is, did they actually even evaluate anything? And if they failed to evaluate it, that's evidence that they didn't act in good faith. Is that correct? Or is that not what you were saying? That's correct, Your Honor. OK, so I get it. So what I'm following is just to make sure this is the point that you said there's a failure to evaluate. And that's a demonstration of a failure to act in good faith. Correct, Your Honor. OK, thanks. All of this viewed in the most favorable light to Mrs. Ellis, the appellant here. There is a genuine issue of material fact as to whether the university made that good faith effort to engage in the interactive process. And a reasonable jury could conclude that the university did not meet its burden to engage in that interactive process to determine whether accommodations were appropriate. Well, let me be sure I'm keeping score right. Your client identified eight positions, right? Correct. The university then said two were filled, and the university said unqualified for a third, and apparently didn't say much about the other five positions. Is that right? That's right, Your Honor. OK, now at that point, whose burden is it to go forward? The burden is on the university to evaluate all of them. They cannot just cherry pick which one to evaluate and use that as a conclusion that there was no position available. They have to evaluate all. Doesn't your Craven's case and most of our cases say at that point the burden is on your client? No, not necessarily. The burden originally is on my client to present the position for which she believes she's qualified, which she did. It then shifts to the university to evaluate. The university only evaluated one, which is what was presented to the district court, and on that basis the district court ruled that there was no position. What about those other five? If they had been evaluated, would she have qualified for one? That is a genuine issue of material fact, and summary judgment is not appropriate. We cannot cherry pick which one to evaluate. Correct. Doesn't your client have to show, though, that there is a position available for which she qualifies with or without an accommodation? Correct, and that's what she did in picking these eight positions. She looked at them, looked at whether she qualifies for them before presenting them. But don't you have to put into the record what the duties are and show that she can, in fact, do those with or without an accommodation? We will be able to put that in the record from the ID information for these jobs. An ID is just a number. It doesn't tell us what the duties are. It does not, Your Honor, but that obligation now is on the university to evaluate. Because my client, there were thousands of jobs at the university. My client picked this eight because she believed she qualified for them. She presented it to the university. It was the university's position, like they did on the one that they evaluated, to look at it and say, okay, you qualify for it, we're going to have you interviewed for it. They did not do that. I hate to bring us back to Cravens, but if I look at Cravens, it appears to me that Ms. Cravens in that case presented a genuine issue of material fact because she actually posted or put in an affidavit which included sworn statements of what the job position was, what the job position duties detailed, what her physical limitations were, and her competence to perform the underlying duties. It seems to me that in all of our cases, when you look at somebody having created a material question of fact that needs to go forward, they've at least done that. I think that you're going to have to show us in this record where something reasonably equivalent to that has taken place. What in this particular record is similar to that? Yes, Your Honor, what the agreement, we were working with the agreement that the university reached with the appellate. Identify us jobs for which you were qualified. She did that. They evaluated just one. And if you look at their evaluation, they did that evaluation looking at her restrictions, the job descriptions, and then they came to the conclusion that, no, you cannot do this job. That was what was supposed to be done in the other five jobs which they did not do. I understand that we're a little different from Craven because Craven, I don't think the detailed arrangement of Craven was that she should present information about the jobs. In our particular situation was for her to identify positions that she believed she qualified for, and the university was going to review them. And once she identified, I think she had met her obligation or her burden, and the university was supposed to evaluate like they did on the one other job. The fact that they did not do it on five other jobs, we cannot tell whether she would have qualified for those jobs. And I don't think it's something for somebody to judge. Counsel, do you want to reserve the rest of your time for rebuttal? Yes, before I do that, Your Honor, the court, we can look at the Benson case, which is also similar to this case. And we've talked about Craven. Unlike in Benson, Ms. Ellis found at least 10 jobs here. In Benson, I think they found just three jobs. And the fact that the employer did not review that, this court overturned the decision of the district court, and we ask that that should be done in this case. And I will reserve the rest of my time. Very well, thank you. Mr. Benred? Thank you. Good morning. Again, I'm Brent Benred, Senior Associate General Counsel from the Office of the General Counsel at the university, appearing for the university. There is, in fact, one issue on appeal today, and that is whether the district court erred in ruling that the university was not required to provide reasonable accommodation to the appellant by reassigning her to another position. The district court's analysis of that issue was on page 31 through 40 of its order. The law that controls the issue does not appear to be in dispute with both the parties and the district court relying on essentially the same decisions from this court. So the case really boils down to the factual record and whether the district court correctly found that there was no disputed issue of material fact that would require the matter to proceed to trial. And in evaluating the factual record, it's important to recognize, and I think the court has already sort of taken this into account in some of the questions that's asked, that there's really two components to that analysis. The party's relative burdens of proof of litigation and the party's obligations to one another during appellant's employment. And this distinction sometimes has gotten blurred in the arguments, both in the briefs and I think already this morning during arguments. So I want to be clear in addressing it. The burden of proof in the litigation is governed by this court's decisions in Fenny v. Dakota and Heizer v. Toro. So under Fenny, appellant bore the initial burden of showing that she was a qualified individual. And then under Heizer, in order to carry that initial burden, appellant had to show that accommodation was possible. Now, appellant acknowledges in the district court correctly found that appellant could not have been accommodated in her current position. So to satisfy her initial burden, appellant had to show that there was a vacant position available that she could have performed, taking into account all of her work restrictions. When appellant addresses the issue in appellant's briefs and here at argument, appellant talks about the jobs appellant identified and requested information about during her employment. But that's not the issue under Fenny and Heizer. The issue is the evidence in the record and whether the evidence shows there was a vacant position available that appellant could have performed. The district court reviewed the issue based on the evidence in the record as gathered by the parties during discovery and as presented by the parties in their summary judgment briefs and at the summary judgment hearing. And the district court correctly found that appellant only presented evidence in the record of one position for the district court to review. On the face of that evidence, the district court correctly found on pages 38 through 40 of its order that appellant could not have performed that position given her work restrictions. The burden of proof never shifted to the university because appellant failed to carry her initial burden of showing there was a vacant position she could have performed. Now, appellant argues the university failed to adequately provide her with information regarding vacant positions or to assist her in identifying vacant positions during her employment. And I'll address that argument in a moment with regards to the party's obligations during appellant's employment. However, in terms of the standard established in Fenney and Heaser, the district court correctly performed its analysis based upon the evidence in the record as gathered through discovery and presented by the parties. Appellant had a full opportunity to conduct discovery and present evidence to the district court. Appellant faults the district court for only reviewing one position. However, appellant only presented one evidence in the record regarding one position for the district court to review. So, based upon the record, the district court correctly found that there is no evidence from which a jury could find that there was a vacant position available that appellant could have performed. Counsel, shouldn't the university at least have said something about the other five positions, you know, some kind of throwaway in an email lying about it? Well, it did, and I'm going to turn it over. Wait, wait, wait, let's get the record straight. I thought, I understand, and I asked about this several times, so feel free to correct me. The university did not provide a response in the record regarding the other five positions. Is that true or false? That is true. Well, it was only four positions because one of the positions had been withdrawn by appellant, but that is correct. Okay, proceed. Okay, so I'm going to turn now to... Well, now, I'm sorry we lost my first question. Why didn't the university at least, you know, at the bottom of some emails say, and the other five also appear, I'll paraphrase the district court, that you're not qualified and not compatible with your long list of medical restrictions? Why wouldn't the university at least do that? There's two answers to that question. The first is the university was in the process of doing that, and there wasn't a very long period of time that was elapsing during all of this. We're talking about a period of one or two weeks, not months or longer periods of time. The second thing I would note is that the appellant had submitted a significant lengthy list of specific questions, I believe 27 or more questions to be exact, of information that she wanted regarding the positions. The university had provided that information to the hiring supervisors in the units, and that information was being gathered. The other thing I would note was that... Is that in the record, counsel, is what you just told me in the record? Yes, it is. That it was being gathered, now I'm focusing on your last phrase, that it was being gathered, is in the record. I believe the answer is yes. There were signals between counsel indicating that the requests had been received and that the university had submitted them and that the information was being gathered, and I believe that specifically happened on March 30th. Okay, proceed. The other thing I was going to say is that all of this happened during a period where greater uncertainty had been inserted into the process. Specifically, appellant had submitted additional medical documentation indicating the need for an additional full-time medical leave, initially a three-week leave that was extended to more than a two-month leave. The medical documentation indicated that appellant would need to have a reduced schedule when she got back, and also that she would have to be reevaluated to determine what additional work restrictions might be needed. During all of this time, no one was really even sure exactly what the restrictions might be when appellant returned from that leave. All in all, it made it extremely difficult. The university could have easily just looked at the positions and said, well, we clearly don't think she could do any of these jobs, but that's not what the university did. The university made it an interactive process, and it continued to engage with the appellant and offered to continue to engage with the appellant with regards to the job. But before I turn to some more specific record sites, including I can probably give you a page in the appendices where the site that you just asked about is located, I want to address this issue of what the key showing is or what the standards are for the party's obligations during appellant's employment as far as providing the information. Under this court's Trina versus MCI case, the university was not obligated to find another position for the appellant. However, the university certainly did have and acknowledges that it had an obligation to work with the appellant through the interactive process to explore the possibility of reassignment. Now, in this court's case in Payton versus Fred stores, this court noted that an employee who claims their employer failed to appropriately engage in this interactive process has to show, first, that the employer did not make a good faith effort to assist the employee. And second, that but for the employer's lack of good faith, the employee could have been reasonably accommodated. Now, appellant's argument focuses almost exclusively on the first element, that is, she claims the university did not act in good faith to assist her, and I'll address that in a moment. However, I want to start with the second element, but for the employer's lack of good faith, the employee could have been reasonably accommodated. This is essentially the same showing that appellant was required to make to satisfy her initial burden of proof under Fenney and Heaser. To make that showing, appellant would have had to produce evidence that there was a vacant position she could have performed, and but for the university's lack of engagement in the interactive process, she could have been reassigned to that position. Once again, that argument fails because appellant has not produced evidence that such a position existed. So, even if appellant could have shown the university did not act in good faith in the interactive process, her claim was still properly dismissed because she failed to show that she could have been reasonably accommodated but for the university's alleged bad faith. Now, of course, as to the first element, appellant also can't show that the university failed to act in good faith in the interactive process. And here are some of the key record sites on that issue. The pivotal date for evaluating the issue is March 14th, 2017. That's the date when the university first was put on notice that appellant could not be accommodated in her current position. That makes March 14th the date when the university was first obligated to consider reassignment as a reasonable accommodation. Now, I'd note that even before March 14th, the record confirms that the university was already offering assistance. And specifically, I'm referring to the record sites on page 18 of the university's brief. After March 14th, on March 16th, a university human resources consultant contacted the appellant to say he was scheduling a meeting for appellant himself and a representative from the university's job center to discuss reassignment to vacant positions. That's in the university's appendix on page 366. Appellant responded on March 16th with an email that included the list of four jobs that's been previously discussed. That's on page 365 of the university's appendix. It's important to note that appellant did not indicated that she considered herself qualified for the jobs. She specifically said she wanted more information about the jobs in order to evaluate whether she could perform them. That's in that same email on page 365 of the university's appendix. Appellant subsequently withdrew a request for information about one of the jobs. That's in appellant's appendix at page 369. And then after exchanging emails with appellant about scheduling, which are on pages 365 and 369 of the university's appendix, the university human resources consultant confirmed on March 21st that the meeting would happen on April 4th. So all of that happened very quickly. Appellant responded that she wasn't available on April 4th. So on March 22nd, the human resources consultant said the meeting would take place on April 6th. On that same day, March 22nd, appellant submitted the new documentation from her doctor that I previously mentioned and went out on a full-time medical leave of absence. And as I previously said, all of this made it extremely difficult to evaluate the issue of reassignment. Nonetheless, the university continued to gauge with appellant even while she was out on the leave. Appellant and her attorney submitted the list of 27 questions that I referenced before. That's on pages 368 through 377 and 458 through 469 of appellant's appendix. By the time appellant submitted the questions, the search process for two of the jobs that had previously been identified was already completed. This is a small, but I think it's an important point since appellant suggests she missed out on the jobs because of the university's slow response. However, the record shows the jobs were in fact filled before appellant even submitted her questions. The university sent appellant's questions to the job center on March 30th along with a list of the four additional positions that appellant had identified by that point and asked the job center to work with the hiring units to get answers to those questions. That's the email I was referencing before and that's part of those documents on pages 368 to 377 and 458 to 469 of appellant's appendix. That March 30th email where the university confirmed that it submitted the information and was gathering it. Here's another important point. On April 7th, appellant's attorney sent the university letter saying it was important that information about jobs be received promptly since jobs sometimes filled quickly. In response the same day, the university suggested that if appellant was interested in a job and was concerned about timing, she should simply submit an application which would preserve her opportunity to pursue the job since she could always withdraw the application if it was later determined the position was not suitable. But at least there'd be no concern that she'd lose out entirely on the opportunity. And that's in the appellant's appendix at pages 371 and 374. And then on April 11th was when the university provided the responses to appellant's 27 questions regarding the one remaining position for her initial request. So all of that happened within less than a month from the date the university was first put on notice of the need to engage in this process whatsoever. So in short, I think the record shows that the university went to great lengths throughout appellant's employment. And even after her employment had ended to work with appellant to find a reasonable accommodation for her disabilities. However, the disabilities and work restrictions were significant and extensive and there simply was no reasonable accommodation to be found. So in conclusion, the district court's decision dismissing appellant's claim was well-reasoned and fully supported by the law and the record. And there are no disputed issues of material fact that require this case to proceed to trial. The district court's decision should be affirmed. And unless the court has other questions, I appreciate your time and thank you. Hearing none, we'll have rebuttal. You'll need to unmute your microphone. Thank you, Your Honor. The appellant is very grateful to the university for what they did to try to accommodate her in her position. Both the appellant and the university came to the point where they said we'll have an accommodation of last resort, reassignment. And this is what this issue is about. It's in the process of reassignment that the university cut the ties with the appellant. They terminated her employment April 17th. They've gone down the timeline that they decided to do reassignment March 14th. Less than a month after, they did not continue the process. The issue here is did the appellant present jobs for which she was qualified? Yes, the appellant did. The appellant requested information about these jobs. The lawyers wrote to the university indicating that she qualified for these positions. The university took days, what, 11 days, two weeks to even respond back that they have sent this job that she has identified to the supervisors or the hiring managers. And by the time they did that, two of them were gone. They evaluated only one. The other five, we don't know what happened. The university has not indicated what happened. In their argument, they argued that, oh, the appellant only provided them with IDs and the appellant did not give them general information. They created the IDs. They were able to find it for the one position that they reviewed. Why can't they find it for the others? And the court is very unpointed. There is no information from the university about these other five positions. How did they find information about the one position that they analyzed? They should have done the same here. If they did not do it, your honor, summary judgment was not appropriate. It is for a jury to determine whether the university acted in good faith in not reviewing these five. Whether in these five other positions, the appellant could have had one of these jobs that she qualified to do with or without her restrictions. So we ask that this decision of the district court be overturned because the appellant met her burden. And we're grateful to the university. But again, the law is the law. They did not meet their burden in reviewing the applications that were submitted to them. And for that reason, the district court should not have issued summary judgment. Thank you. Counsel, we thank you for your appearance today and your arguments. The case will be submitted and decided in due course.